AARON M. CLEFTON, Esq. (SBN 318680)
CLEFTON DISABILITY LAW
2601 Blanding Ave Suite C, #336
Alameda CA 94501
Telephone: 510/832-5001
Fax: 510/832-4787
info@cleftonlaw.com

Attorneys for Plaintiff
JAMES ALGER

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMES ALGER,<br>Plaintiff,<br>v.<br>3650 REIT ANAHEIM, LLC dba THE VIV HOTEL<br>Defendant. | CASE NO. 2:26-cv-12202<br>Civil Rights<br>**COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF:**<br>**1. Violations of Americans with Disabilities Act of 1990 (42 U.S.C. § 12101 *et seq.*)**<br>**DEMAND FOR JURY TRIAL** |

Plaintiff JAMES ALGER, complains of Defendant 3650 REIT ANAHEIM, LLC dba THE VIV HOTEL, and alleges as follows:

1. **INTRODUCTION:** This is a civil rights action involving the lack of disabled access to the building, structure, facility, complex, property, land, development, and/or business complex known as "The Viv Hotel" located at 1601 South Anaheim Blvd., Anaheim, CA 92805 ("The Viv"). Specifically, Defendant repeatedly denied Plaintiff, a person with a disability who uses a wheelchair or scooter for mobility ("Wheelchair"), equal and independent access to the swimming pool and spa because they do only have a mobile pool lift serving the rooftop pool and jacuzzi which is not kept out at either, so they are not independently operable. Furthermore, when Plaintiff requested that the lift be brought out for him to use no

one was available to assist him for over 30 minutes. This was exceptionally frustrating since he was hoping to watch the Disneyland fireworks from the jacuzzi, which are on a specific schedule and do not wait for the hotel staff at The Viv.

2. Defendant's failure to provide accessible facilities, violates the "full and equal" access guaranteed by Title III of the Americans with Disabilities Act of 1990. Consequently, Plaintiff has experienced barriers to full and equal access at The Viv, causing embarrassment and humiliation.

3. Plaintiff seeks injunctive relief to ensure full and equal access, all remedies available under the Americans with Disabilities Act of 1990 ("ADA"). Additionally, Plaintiff seeks declaratory relief, along with recovery of reasonable, attorney fees, litigation expenses, and cost as permitted by federal law.

4. **JURISDICTION:** This Court has jurisdiction of this action pursuant to 28 USC sections 1331 and 1343.

5. **VENUE:** Venue is proper in this court pursuant to 28 USC section 1391(b) and is proper because the real property which is the subject of this action is located in this district and that Plaintiff's causes of action arose in this district.

6. **PARTIES:** Plaintiff JAMES ALGER is, and at all relevant times herein was, a qualified individual with a physical disability as defined by 42 U.S.C. § 12102 and other statutory measures which refer to the protection of the rights of "physically disabled persons."

7. Plaintiff has been diagnosed with Charcot-Marie-Tooth disease (CMT), a genetic neuropathy that affects the peripheral nerves involved in muscle control, leading to progressive sensory and motor impairments in the extremities—such as the hands, arms, legs, and feet—along with episodes of severe pain caused by both the neuropathy and a back injury. Information about the disease is available from the National Institutes of Health at https://www.ninds.nih.gov/health-information/disorders/charcot-marie-tooth-disease.

8. In recent years, the disease's advancement has impacted Plaintiff's respiratory muscles, leading to breathing difficulties that necessitate the use of a non-invasive ventilator in specific situations. This worsening condition is highly likely to prove fatal for the Plaintiff. A back injury sustained at work has worsened the condition, hastening the disease's progression. Consequently, Plaintiff experiences considerable difficulties with mobility, fine motor skills, and daily activities. Although Plaintiff can walk short distances with significant assistance, he mainly relies on a Wheelchair for mobility and uses a vehicle fitted with hand controls for transportation.

9. Due to his restricted range of motion, diminished strength, and impaired dexterity, Plaintiff requires assistance with activities of daily living, including dressing, grooming, and loading his Wheelchair into and out of his vehicle. Although Plaintiff actively resists claiming he requires constant 24-hour care, he increasingly requires general supervision and assistance.

10. In what sometimes feels like a futile effort to preserve functionality and alleviate pain associated with his disability, Plaintiff frequently utilizes facilities, such as swimming pools and Jacuzzis/spas, especially when utilizing the services of a hotel for another purpose such as travel, being prepositioned for a scheduled meeting the following day or on occasion being in an area that is closer to where friends and family are located should he require assistance and that assistance not be available at home for a multitude of reasons.

11. Plaintiff relies on a noninvasive ventilator due to compromised respiratory muscles, which impairs his breathing when supine. He requires assistance with setting up, using, and removing the ventilator. Malfunctions or disconnections of the device, which have occurred previously, pose severe risks, including hospitalization or worse if assistance is not promptly available. Family members or close friends typically provide this support.

12. Plaintiff's disability presents progressive challenges that have and will continue to evolve over time. At the time of this filing, Plaintiff is able, with assistance, to dress and enter his adapted vehicle. Plaintiff can manage daily activities with minimal assistance, including help transferring in and out of his Wheelchair, and functions with some assistance in his home. Both his vehicle and home have been modified to accommodate his needs limiting but not eliminating the requirement of assistance.

13. Plaintiff has been issued a permanent disabled parking placard by the State of California and resides in Porter Ranch, California.

14. Defendant 3650 REIT ANAHEIM, LLC dba THE VIV HOTEL, is and was at all relevant times the owner, operator, lessor, and/or lessee of the subject business, property, and buildings at all times relevant to this Complaint. Defendant did not make the necessary accommodations to ensure that its facilities, products, and services were accessible to Plaintiff and others with physical disabilities. This non-compliance with federal laws on accessibility has directly led to the violations, continuing issues, and harms suffered by Plaintiff, as detailed in this complaint.

15. Plaintiff is informed and believes, and thereon alleges, that Defendant owned and operated the subject business as a public accommodation. The business is open to the public and conducts business therein. The business is a "public accommodation" or "business establishment" subject to the requirements of the ADA, 42 U.S.C. §12101, et seq.

16. **FACTUAL STATEMENT:** Plaintiff has been subject to discrimination by Defendant, as the amenities and policies at The Viv do not comply with the ADA. Defendant has neglected and persistently declined to ensure full, equal, and *independent* access to the services, amenities, benefits, and accommodations that are available to individuals without disabilities at The Viv.

17. The Viv and its facilities, including, but not limited to, its entrances/exits, parking, interior paths of travel, transaction counters, restrooms,

and eating areas are each a "public accommodation" and part of a "business establishment," subject to the requirements of § 301(7) of the ADA (42 U.S.C. § 12181(7).

18. On information and belief, The Viv has since January 26, 1992, undergone construction, alterations, structural repairs, and/or additions, subjecting The Viv to disabled access requirements of § 303 of the ADA (42 U.S.C. § 12183). Irrespective of The Viv's construction and alteration history, removal of the access barriers at the subject premises are subject to the "readily achievable" barrier removal requirements of Title III of the ADA.

19. Plaintiff is a dedicated member of the Marriott Bonvoy wards program and frequently stays at Marriott branded hotels, such as The Viv, averaging well over 100 nights at Marriott hotels per year for over the past decade. He is currently in his 11th year at titanium elite status, the second highest year in the Marriott Bonvoy rewards program, which has also earned his lifetime platinum elite status.

20. Plaintiff is a Disneyland annual pass holder who frequently visits the park, making it a regular part of his routine to stay at hotels near Disneyland for a planned visit the following day or on the return trip home after enjoying a day at the park. This practice is particularly important, given the limitations imposed by his disease, as it allows him to manage fatigue effectively, and ensure he can rest adequately during travel aligning with his need to prioritize health and energy conservation.

21. Plaintiff chooses to stay at hotels for a variety of reasons, but once he decides to do so, he prioritizes hotels with Aquatic Facilities, which are essential for his exercise, stretching, pain management, and efforts to slow the progression of his disability, as well as for managing fatigue and supporting his personal enjoyment. Therefore, the presence of Aquatic Facilities is a key consideration in his hotel selection process. Other factors he weighs include the cost of the stay, the

availability of electric vehicle charging stations, and the hotel's location relative to his travel plans.

22. Plaintiff relies on water exercises in an attempt to preserve his muscle function and range of motion, making access to a hotel's Aquatic Facilities essential for both his health and enjoyment. However, due to his disabilities, Plaintiff requires an accessible pool lift to safely enter and exit the pool and spa or jacuzzi. Unfortunately, he has found that many hotels often lack such a lift, or their lifts are not working. As his condition has progressed, and thus his reliance on hotels being accessible increased, the lack of accessibility has become an ever-increasing source of frustration to Plaintiff. As such, he has begun holding hotels accountable for repeated failures to be accessible, especially after they have been made aware repeatedly.

23. Plaintiff stayed at The Viv on October 23, 2024, October 23, 2025, and June 4, 2026. On all three visits, Plaintiff was in the area to visit Disneyland, and he specifically chose to stay at The Viv due to the hotel's proximity to Disneyland and rooftop pool where guests can enjoy the Disneyland fireworks displays.

24. On each of his visits, Plaintiff attempted to use the rooftop pool and spa to watch the fireworks, but it was impossible to do so independently as there is only one portable lift serving both the pool and the spa which is stored and not kept at the poolside. Thus, Plaintiff cannot enter the rooftop pool or spa until one of Defendant's employees who knows how to install and operate the lift safely is available to assist him.

25. Below are photos of the rooftop pool and spa and the portable lift, unusable.


Apr 27, 2026 at 4:34:43 PM
S Anaheim Blvd, Orange County
Index number:4995
3 FT 6 IN


Apr 27, 2026 at 4:35:42 PM
S Anaheim Blvd, Orange County
Index number:4996
EXIT
3 FT 6 IN

**October 23, 2024, Visit to The Viv**

26. On October 23, 2024, Plaintiff stayed overnight at the Viv and was assigned Room 1036.

27. At check-in, although Plaintiff was seated in a powered mobility scooter, he was directed to the standard-height front desk counter to complete the check-in process. From his seated position, the top of the counter was at approximately shoulder or neck level. Because of his disability, Plaintiff could not readily see the counter surface or independently reach and operate the credit-card/point-of-sale device without assistance.

28. Despite Plaintiff's request to be assigned a mobility accessible room through his Marriott profile, he was assigned to Room 1036 at check-in which was not a mobility-accessible room. The limited space around the bed and furniture made it difficult for Plaintiff to maneuver his scooter and position himself for transfers. Plaintiff also had difficulty independently using the bathroom fixtures, room controls, and curtains.

29. Plaintiff went to the rooftop pool and Jacuzzi area intending to use the Jacuzzi and watch the Disneyland fireworks from the rooftop area. However, the Viv Hotel's portable accessibility lift was not positioned at the pool or Jacuzzi and could not be used.

30. Plaintiff contacted the Viv for assistance. Plaintiff became tired of waiting for hotel personnel to assist him, so he asked for assistance from a third party unaffiliated with the Viv to move the lift into position and assist him with operating the lift.

31. Viv personnel arrived after the lift had been moved and told Plaintiff and that the lift should not have been moved without hotel personnel. This was a particularly frustration response for Plaintiff because for every other guest of the Viv, using the rooftop pool or Jacuzzi is as simple as walking up and getting into the water, but for Plaintiff, it required a request for assistance, intervention by hotel

personnel, and the relocation and setup of specialized equipment before he could use the same amenity.

32. Despite his frustration, Plaintiff left this stay believing that if he returned, the Viv would hopefully have a better system in place so that the accessibility lift would actually be available when a disabled guest wanted to use the rooftop pool or Jacuzzi.

**<u>October 23, 2025, Visit to The Viv</u>**

33. On October 23, 2025, Plaintiff returned to the Viv for an overnight stay. At check-in, Plaintiff was again directed to the standard-height counter, which was at approximately shoulder or neck level from his seated position. A lower section of the front desk was nearby but the Viv appears to have a policy of only using standard height counters to check-in all guests. The lower surface was being used to hold bags, containers, and miscellaneous items. No hotel employee cleared it, directed Plaintiff to it, or offered to conduct the transaction there. Plaintiff had to rely on a third party unaffiliated with the Viv to complete portions of the transaction.

34. Plaintiff was assigned to Room 300, and once again the room was not a mobility-accessible room despite Plaintiff's request. As in 2024, Plaintiff had difficulty maneuvering his scooter around the bed and furniture, making transfers, accessing bathroom facilities, reaching controls, and operating curtains.

35. That evening, Plaintiff went to the rooftop pool and Jacuzzi. The portable lift was again not positioned for use at either the pool or the Jacuzzi.

36. Consistent with the Hotel's instruction the prior year, Plaintiff did not move the lift himself. At approximately 7:20 PM, he messaged the Viv through the Marriott messaging system. Plaintiff wrote, "Good evening. Would you be able to send someone up to the pool area for assistance with the ADA lift, it is not positioned where it can be used in either the pool or the spa." The system acknowledged the message.

37. At approximately 7:27 PM, having received no substantive response, Plaintiff sent a second message: "Hello?" At approximately 7:34 PM, the Viv apologized for the delay and responded that it could send someone upstairs.

38. Plaintiff again became tired of waiting. After waiting for approximately 30 minutes, he again asked a third party unaffiliated with the Viv to move the lift into position so he could enter the jacuzzi.

39. This experience was extremely frustrating for Plaintiff. The Viv apparently had the equipment necessary to provide access, but it was not positioned where it could be used when Plaintiff arrived. Thus his access depended upon contacting the front desk, waiting for the front desk to locate someone from maintenance, waiting for that person to come upstairs, and then waiting while a large piece of equipment was moved into place. The process is conspicuous and humiliating. Other guests can walk up to the rooftop pool or Jacuzzi and use it immediately. Plaintiff is left sitting in his mobility device while hotel personnel are summoned to make the accessibility equipment available. There is no certainty that the process will be quick or that the lift will be immediately functional once someone arrives. Portable lifts depend upon batteries and other equipment that also have to be available and operational.

40. As a result of the Viv's policy Plaintiff could access the rooftop Jacuzzi independently or at the time he chose. He had to request assistance, wait, follow up when no one responded, and then rely upon someone other than hotel personnel before he was finally able to use the same amenity that was immediately available to every other guest.

**<u>June 4, 2026, Visit to The Viv</u>**

41. On June 4, 2026, Plaintiff stayed at the Viv a third time. Once again, at check-in, Plaintiff was served at the standard-height counter and had to rely on a third party unaffiliated with the Viv to assist with the transaction. Again, the lower section of the desk was not maintained as an available check-in area. Items had

been placed on its surface, and no Hotel employee offered to conduct the transaction there.

42. Plaintiff was assigned to Room 536 which was, once again, not a mobility-accessible room. Plaintiff had difficulty maneuvering his scooter, positioning himself for transfers, using the bathroom, reaching controls, and operating curtains.

43. That evening, Plaintiff went to the rooftop pool and Jacuzzi. The lift was not positioned for use. Plaintiff requested Hotel assistance, and no one came. Having twice been told not to have the lift moved by others, Plaintiff did not use the rooftop pool or Jacuzzi that evening. As a result Plaintiff was a paying hotel guest standing beside an amenity that was open and available to everyone around him, yet he could not use it because the accessibility equipment was not positioned for use and the Viv did not provide the assistance necessary to make it available to Plaintiff.

44. One portable lift was parked away from the water and not usable for Plaintiff to enter either the pool or jacuzzi. A second lift was off to the side near the rooftop perimeter with its protective covering badly torn, portions of its mechanism exposed, and no battery visibly installed. Neither lift was set up for use at the pool or Jacuzzi.

45. During the June 2026 stay, Plaintiff spent time in the Viv's restaurant and dining areas. The tables available were not accessible to Plaintiff. Many tables had large central supports or projecting bases that occupied the knee and foot space beneath the tabletop. Because of his disability, Plaintiff cannot reposition his legs or pull them tightly underneath him, and the bases prevented him from bringing his scooter and footrest close enough to use those tables comfortably. The dining areas also contained numerous high-top tables with tall stools. Plaintiff could not practically use these from his mobility scooter.

46. The rooftop bar area has a lowered service counter bearing wheelchair accessibility symbols. However, at the time of Plaintiff's visit, the lowered surface was being used to hold trays, dishes, and other restaurant and bar service items, and a tall chair was positioned adjacent to it. As a result, the portion of the counter provided for wheelchair users was not available for Plaintiff's use.

47. Plaintiff believes it is futile to return to The Viv until he is notified of its compliance with federal accessibility laws and regulations.

48. Plaintiff will stay at The Viv in the future if it is made accessible.

49. These barriers to access are listed without prejudice to Plaintiff citing additional barriers to access after inspection by Plaintiff's accessibility expert.

50. Plaintiff alleges that it would be a futile gesture to provide notices of violations relating to his continued or attempted visits, which are certain to occur regularly following the filing of this Complaint. Therefore, Plaintiff will seek to supplement this Complaint at the time of trial as to subsequent events, according to proof.

51. Defendant is aware or reasonably should have been aware, that certain aspects of their establishment and their policies made The Viv inaccessible, constituting a violation of federal laws and hindering or denying access to individuals with mobility impairments. Based on available information, it is believed that Defendant possess the necessary financial means to eliminate these obstacles and make The Viv accessible to people with physical disabilities. But Defendant has not taken action to remove these barriers or to ensure full and equal access to the facility.

52. Because of Defendant's conduct, including their omissions and their failure to ensure access for the disabled, Plaintiff has experienced a violation of his civil rights, emotional distress, and infringement of his right to full and equal enjoyment of public facilities. Each instance of denied access has subjected Plaintiff to difficulties, discomfort, and humiliation. Plaintiff has thus had to seek

legal counsel and is now claiming statutory attorney's fees, litigation expenses, and costs, as provided for under federal.

53. Plaintiff's goal in this suit is a positive one: to make The Viv fully accessible to persons with similar mobility disabilities.

**FIRST CAUSE OF ACTION:**
**VIOLATION OF THE AMERICANS WITH DISABILITIES ACT OF 1990**
**42 USC §§ 12101 *et seq***

54. Plaintiff repleads and incorporates by reference, as if fully set forth hereafter, the allegations contained in all paragraphs of this Complaint and incorporates them here as if separately repled.

55. Plaintiff was at all times relevant here a qualified individual with a disability as defined by the ADA, as he has impairments that substantially limit one or more major life activities.

56. Plaintiff has reasonable grounds for believing he will be subjected to discrimination each time he may attempt to access and use the subject facilities.

57. The subject property are among the "private entities," which are considered "public accommodations" for purposes of Title III of the ADA. 42 U.S.C. § 12181(7).

58. The acts and omissions of Defendant set forth here were in violation of Plaintiff's rights under the ADA and the regulations promulgated under it, 28 C.F.R. Part 36, *et seq,* including 1991 ADA Standards for Accessible Design ("1991 Standards"), including, but not limited to, §§ 4.3; 4.3.3 § 4.6.3; 4.3.5.1; 9.1.4 [dispersion rule]; and/or the 2010 ADA Standards for Accessible Design ("2010 Standards"), including, but not limited to, §§ 206; 207; 242.2; 502; 503; 904; 1009.

59. Moreover, 28 CFR § 36.211 mandates that "A public accommodation shall maintain in operable working condition those features of facilities and equipment that are required to be readily accessible to and usable by persons with disabilities by the Act or this part." Defendant has violated this regulation by failing

to ensure that the accessible features at The Viv are adequately maintained, including usable operable pool and spa/Jacuzzi lifts.

60. Plaintiff alleges on information and belief that the Viv was designed and constructed (or both) after January 26, 1993 -- independently triggering access requirements under Title III of the ADA.

61. Here, Defendant violated the ADA by designing or constructing (or both) The Viv in a manner that did not comply with federal disability access standards even though it was practicable to do so.

62. The removal of each of the barriers complained of by Plaintiff were at all times here mentioned "readily achievable" under the standards §§12181 and 12182 of the ADA.

63. Defendant has discriminated against Plaintiff in violation of Title III of the ADA by:

(a) providing benefits that are unequal to that afforded to people without disabilities by not providing accessible features; (b) failing to make reasonable modifications in policies, practices, or procedures (at The Viv) when such modifications are necessary to afford, and would not fundamentally alter the nature of, the goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities; (c) failing to take steps as may be necessary to ensure that no individual with a disability is excluded, denied service, segregated, or otherwise treated differently than other individuals because of the absence of auxiliary aids and services; (d) failing to construct and/or alter The Viv in compliance with applicable federal standards for accessibility; (e) failing to remove architectural barriers that are structural in existing facilities where such removal is readily achievable; and (f) where Defendant can demonstrate the removal of architectural barriers is not readily achievable, failing to make the goods, services, facilities, privileges, advantages, or accommodations available through alternative methods if such methods are readily achievable. On information and belief, as of the date of

Plaintiff's most recent visit The Viv and as of the filing of this Complaint, the subject premises have denied and continue to deny full and equal access to Plaintiff and to other similarly mobility disabled persons in other respects, which violate Plaintiff's rights to full and equal access and which discriminate against him on the basis of his disability, thus wrongfully denying him the full and equal enjoyment of the goods, services, facilities, privileges, advantages and accommodations, in violation of §§ 12182 and 12183 of the ADA. Providing accessible facilities including accessible paths of travel, entrance/exit doors, aisle, and seating is a fundamental necessity. Without this ability, Plaintiff is unable to avail himself of the goods and services offered at The Viv on a full and equal basis. Therefore, the benefits of creating access does not exceed the costs of readily achievable barrier removal. These costs are fundamental to doing business, like any other essential function of operating a public accommodation. It is thus readily achievable to remove these barriers. Furthermore, these are the types of barriers identified by the Department of Justice as presumably readily achievable to remove, and, in fact, these barriers are readily achievable to remove.

64. Under the ADA, 42 U.S.C. 12188 *et seq.,* Plaintiff is entitled to the remedies and procedures set forth in § 204(a) of the Civil Rights Act of 1964, 42 U.S.C. 2000(a)-3(a), as he is being subjected to discrimination based on disability in violation of the ADA or has reasonable grounds for believing that he is about to be subjected to discrimination.

65. Plaintiff seeks relief under remedies set forth in § 204(a) of the Civil Rights Act of 1964, 42 U.S.C. 2000(a)-3(a), and under Federal Regulations adopted.

WHEREFORE, Plaintiff requests relief as outlined below.

**PRAYER**

1. Plaintiff has no adequate remedy at law to redress the wrongs suffered as explained in this Complaint. Plaintiff has suffered and will continue to suffer

irreparable injury because of the unlawful acts, omissions, policies, and practices of Defendant as alleged here, unless Plaintiff is granted the relief he requests. Plaintiff and Defendant have an actual controversy and opposing legal positions as to Defendant's violations of the laws of the United States. The need for relief is critical because the rights at issue are paramount under the laws of the United States.

2. Plaintiff requests a declaratory judgment that Defendant's actions, omissions, and failures—including, but not limited to, failing to remove known architectural barriers at The Viv to make it "accessible to and useable by" mobility disabled persons; failing to construct and/or alter The Viv in compliance with federal access standards; and failing to make reasonable modifications in policy and practice for Plaintiff and other persons with similar mobility disabilities.

3. Plaintiff requests that the Court issue an order enjoining Defendant, its agents, officials, employees, and all persons and entities acting in concert with them:

a. From continuing the unlawful acts, conditions, and practices described in this Complaint;
b. To provide reasonable accommodation for persons with disabilities in all its programs, services, and activities at The Viv;
c. To ensure that persons with disabilities are not denied the benefits of, or participation in, programs, services, and activities at the Facilities;
d. To modify the above-described facilities to provide full and equal access to persons with mobility disabilities, including, without limitation, the removal of all barriers to access where "readily achievable;"
e. To maintain such accessible facilities once they are provided;
f. To train Defendant's employees and agents in how to accommodate the rights and needs of physically disabled persons at the Facilities;

and

g. To implement nondiscriminatory protocols, policies, and practices for accommodating persons with mobility disabilities at the Facilities.

4. Plaintiff requests that the Court retain jurisdiction over Defendant until the Court is satisfied that Defendant's unlawful policies, practices, acts and omissions, and maintenance of inaccessible public facilities as complained of here no longer occur, and cannot recur;

5. Plaintiff requests all reasonable statutory attorney fees, litigation expenses, and costs of this proceeding as provided by 42 U.S.C. § 12205;

6. Plaintiff requests interest on attorney fees awards as permitted by law; and

7. Plaintiff requests any other relief that this Court may deem just and proper.

Date: October 19, 2026 CLEFTON DISABILITY LAW

*/s/ Aaron Clefton*
By AARON CLEFTON, Esq.
Attorney for Plaintiff
JAMES ALGER

**JURY DEMAND**

Plaintiff hereby demands a trial by jury for all claims for which a jury is permitted.

Date: October 19, 2026 CLEFTON DISABILITY LAW

*/s/ Aaron Clefton*
By AARON CLEFTON, Esq.
Attorney for Plaintiff
JAMES ALGER